IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

DR. YUL CHU                                                      PLAINTIFF

v.                                    CIVIL ACTION NO. 1:08-CV-00232-GHD-DAS

MISSISSIPPI STATE UNIVERSITY;
BOARD OF TRUSTEES, INSTITUTIONS OF HIGHER LEARNING;
DR. ROBERT H. "DOC" FOGELSONG, Individually and Officially;
DR. D.E. MAGEE, JR., Individually and Officially; and
DR. THOMAS C. MEREDITH, Commissioner, Individually and Officially        DEFENDANTS

MEMORANDUM OPINION

Presently before the Court are Defendants' motion to dismiss [44] all claims except the

Title VII claim, and Plaintiff's motion to compel immunity-related discovery [58]. Upon due

consideration, the Court is of the opinion that the motion to dismiss [44] should be granted and

the motion to compel [58] should be denied as moot.

*A.  Factual and Procedural Background*

Plaintiff Dr. Yul Chu ("Plaintiff") was a non-tenured professor at Mississippi State

University ("MSU") for several years until he was denied tenure and terminated from his

position. Plaintiff, a proclaimed native of Korea, alleges that he was the victim of discrimination

during his employment, and that he was terminated for discriminatory reasons. Accordingly,

Plaintiff has commenced this suit against Defendants MSU; the Board of Trustees, Institutions of

Higher Learning (the "Board"); as well as Dr. Robert H. "Doc" Fogelsong; Dr. D.E. Magee, Jr.;

and Dr. Thomas C. Meredith, Commissioner, all individually and officially (collectively,

"Defendants").[1]  From 2001 until 2007, Plaintiff apparently was employed as an assistant

professor at MSU. During this time period, it appears that the parties executed employment

---

[1] At the time the Board voted to deny Plaintiff's request for board review in August of 2001, Dr.
Fogelsong was President of MSU, while Dr. Magee and Dr. Meredith served as trustee and commissioner of the
Board, respectively.

contracts for each of the six academic years that fell within that period. At some point, Plaintiff was approved for tenure-track status, and Plaintiff applied for tenure. Plaintiff's application for tenure was denied, and Plaintiff alleges he was told he would be terminated from his position at MSU. Plaintiff appealed to the Board. On August 15, 2007, the Board unanimously voted to deny Plaintiff's request for board review, thus confirming the denial of tenure. Plaintiff executed a contract on August 20, 2007. *See* Employment Contract [53-3] at 1. Under the terms of the contract, which covered the period of August 16, 2007 until May 15, 2008, Plaintiff worked as an "assistant professor, electrical and computer engineering (tenure track)" at MSU. The contract states that it is subject to the "laws of the State of Mississippi" and to termination for certain enumerated reasons at any time prior to the contract's termination date, May 15, 2008.

In this action, Plaintiff asserts several theories of recovery, including alleged violations of his constitutional rights to substantive and procedural due process and equal protection under 42 U.S.C. § 1983, employment discrimination under Title VII of the Civil Rights Act, and breach of contract under state law. Plaintiff alleges that during his employment at MSU he suffered discrimination "because he is a native of Korea and because of his distinctive skin color and accent" and that "Defendants' employment policies have discriminated against at least one other person in [Plaintiff's] Department of non-American origin" who "also had a distinctive skin color, ethnicity, and speech." *Id.* ¶¶ 7, 9, 11–12. Plaintiff additionally alleges that despite knowledge of the alleged discrimination, Defendants failed to conduct a prompt, remedial investigation into Plaintiff's allegations of discrimination. Plaintiff avers that Defendants unlawfully terminated him due to his race and national origin, and failed to conduct a prompt, remedial investigation following his termination, despite awareness of Plaintiff's past allegations of discrimination. Finally, Plaintiff alleges that Defendants "discriminatorily applied their

2

policies" and failed to follow their own policies in violation of "Plaintiff's contractual relationship with [D]efendants" in violation of both federal and state law. *Id.* ¶ 10. Plaintiff seeks actual damages, injunctive relief, and any other relief to which he is entitled, including possible reinstatement with full benefits.

Defendants have filed a motion to dismiss [44] all claims except the Title VII claim against MSU and the Board. Plaintiff has filed a subsequent motion to compel discovery relating to immunity issues [58].[2] The parties informed the Court that immunity-related discovery was complete, and the Court entered an Order [78] establishing a briefing schedule for supplemental responses and briefing to add discovery materials to the filings on the motion to dismiss. The parties then filed supplemental briefs regarding these issues.

### B.    Legal Standards

"The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). Of course, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The court must not evaluate the likelihood of the claim's success, but instead ascertain whether the plaintiff has stated a legally cognizable claim that is plausible. *Lone Star Fund*, 594 F.3d at 387 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under

---

[2] The Court notes that the Order staying the case [57] provided that "[t]his case, all deadlines of this case, all discovery, including but not limited to any outstanding discovery, are stayed except as to any discovery which may be filed on the immunity issue only." (emphasis added).

Rule 56." FED. R. CIV. P. 12(d). Because in considering the motion to dismiss the Court has reviewed the parties' attached matters outside the pleadings which this Court shall not exclude, the motion shall be considered a motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548. The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S. Ct. 2548. Under Rule 56(a) of the Federal Rules of Civil Procedure, the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S. Ct. 2548; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

### C.     Discussion and Analysis

Defendants argue that the Court should dismiss all of Plaintiff's claims except the Title VII claim against MSU and the Board. Defendants present the following specific arguments in

support of dismissal: (1) the Eleventh Amendment bars Plaintiff's theories of recovery under Section 1983, and Plaintiff has otherwise failed to state a claim for relief under Section 1983; (2) both the Eleventh Amendment and the Mississippi Tort Claims Act (the "MTCA") bar Plaintiff's state law breach of contract claim, the individually named Defendants are otherwise entitled to good faith immunity and/or qualified immunity, and the statute of limitations has run on the claim; and (3) Plaintiff's Title VII claim is barred to the extent it is asserted against the individually named Defendants, as such Defendants are not "employers" for purposes of Title VII.

The Court addresses the arguments for dismissal as follows: (1) whether the Eleventh Amendment bars Plaintiff's theories of recovery under Section 1983 and state law for breach of contract; (2) whether any remaining theories of recovery under Section 1983 are barred under principles of qualified immunity or failure to state a claim under Rule 12(b)(6); (3) whether any remaining breach of contract theories are barred under principles of qualified immunity; and (4) whether the Title VII claim is barred to the extent it is asserted against the individually named Defendants.[3]

## 1. Eleventh Amendment Immunity – Section 1983 Claims and Breach of Contract Claim

### a.       Eleventh Amendment Background

First, Defendants argue that Plaintiff's theories of recovery under Section 1983 and state law for breach of contract are barred by Eleventh Amendment immunity. Courts should address Eleventh Amendment immunity challenges prior to reaching the merits of a case. *See United States v. Tex. Tech Univ.*, 171 F.3d 279, 285–86 (5th Cir. 1999). Sovereign immunity is a broad jurisdictional doctrine prohibiting suit against the government absent the government's consent.

---

[3] Because the Court finds the breach of contract claim is otherwise barred, the Court need not reach the issues of whether the claim is barred by the MTCA or an applicable statute of limitations.

Sovereign immunity was assumed at common law, brought from England to the colonies, and existed prior to the ratification of the United States Constitution. Although the term "sovereign immunity" nowhere appears in the Constitution, the concept was perhaps woven into the very fabric of the document. Andrew Hamilton explained:

> It is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent. This is the general sense, and the general practice of mankind; and the exemption, as one of the attributes of sovereignty, is now enjoyed by the government of every State in the Union.

THE FEDERALIST NO. 81, at 511 (Alexander Hamilton) (Wright ed., 1961). At the Virginia ratifying convention, James Madison stated: "Jurisdiction in controversies between a state and citizens of another state is much objected to, and perhaps without reason. It is not in the power of any individuals to call any state into court." 3 DEBATES ON THE FEDERAL CONSTITUTION 533 (J. Elliot 2d ed., 1854). At that same convention, John Marshall stated: "With respect to disputes between a state and the citizens of another state, its jurisdiction has been decried with unusual vehemence. I hope no gentleman will think that a state will be called at the bar of the federal court." 3 *id.*, at 555.

Despite the long-standing principle of sovereign immunity, in 1793, the United States Supreme Court held that a state could be sued by a citizen of another state or a foreign country. *See Chisolm v. Georgia*, 2 Dall. 419, 1 L. Ed. 440 (1793). But five years later, the states ratified the Eleventh Amendment, which provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI; *see* C. JACOBS, THE ELEVENTH AMENDMENT AND SOVEREIGN IMMUNITY 64–75 (1972). The Fifth Circuit has stated: "Eleventh Amendment immunity operates like a

6

jurisdictional bar, depriving federal courts of the power to adjudicate suits against a state." *Union Pac. R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011) (internal citations omitted). "The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States, and by its own citizens as well." *Lapides v. Bd. of Regents*, 535 U.S. 613, 616, 122 S. Ct. 1640, 152 L. Ed. 2d 806 (2002) (citation omitted). Indeed, "[t]he amendment has been judicially construed to bar federal jurisdiction over suits brought against a state by its own citizens, despite the absence of language to that effect." *See Jagnandan v. Giles*, 538 F.2d 1166, 1177 (5th Cir.), *cert. denied*, 432 U.S. 910, 97 S. Ct. 2959, 53 L. Ed. 2d 1083 (1977) (internal citations omitted). Both federal and state law claims are barred from being asserted against a state in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119–21, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984).[4]

State immunity "extends to any state agency or entity deemed an 'alter ego' or 'arm' of the state." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). "This immunity also extends to state officials who are sued in their official capacities because such a suit is actually one against the state itself." *New Orleans Towing Ass'n, Inc. v. Foster*, 248 F.3d 1143, 2001 WL 185033, at *3 (5th Cir. Feb. 6, 2001); *see Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991) (citing *Ky. v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)); *Pennhurst*, 465 U.S. at 117, 104 S. Ct. 900.

### b.  Eleventh Amendment Analysis

Plaintiff has brought Section 1983 claims and the breach of contract claim against MSU, the Board, and the individually named Defendants in their personal and official capacities.

---

[4] Congress did not abrogate Eleventh Amendment immunity by granting federal courts supplemental jurisdiction over state law claims in 28 U.S.C. § 1367(a). *See Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 541–42, 122 S. Ct. 999, 152 L. Ed. 2d 27 (2002).

Based on the following reasoning, the Court finds: (i) the Eleventh Amendment bars the Section 1983 claims and breach of contract claim against MSU, the Board, and the individually named Defendants in their official capacities, unless an exception applies; (ii) the Eleventh Amendment bars any <u>injunctive relief</u> sought against the individually named Defendants in their personal capacities, unless an exception applies; and (iii) the Eleventh Amendment does not bar any <u>monetary relief</u> sought against the individually named Defendants in their personal capacities.

It is well settled that Defendants MSU and the Board are arms of the State, and as such, are immune from suit under the Eleventh Amendment unless an exception applies. *See* MISS. CODE ANN. § 37-113-3; *Jagnandan*, 538 F.2d at 1173–78 (a suit against MSU is a suit against the State, as any recovery would come from the State). The Fifth Circuit has explained:

> The genesis of Mississippi State University (M.S.U.) is found in Chapter XIX of the Laws of the State of Mississippi, approved February 28, 1878. The school was first known as the Agricultural and Mechanical College of the State of Mississippi. Laws of Mississippi, ch. XIX, § 2. Overseeing the school was a Board of Trustees appointed by the Governor with the advice and consent of the state senate. *Id.* § 3. The Board was declared to be a body politic and corporate, capable of suing and being sued. *Id.* § 5. The Governor was the *ex officio* president. *Id.* § 6. The State Treasurer was the *ex officio* treasurer, empowered to keep and disburse all moneys of the school according to the orders of the Board. *Id.* § 8. Later, Mississippi's universities were placed under the control of the Board of Trustees of state institutions of higher learning. The Agricultural and Mechanical College of Mississippi logo was changed to Mississippi State University by statute, although the school retained "all its property and the franchises, rights, powers, and privileges heretofore conferred on it by law (1878 Act) . . . ." MISS. CODE ANN. § 37-113-3 (1972).

*Jagnandan*, 538 F.2d at 1174 (footnotes omitted). The Fifth Circuit further stated: "This statutory scheme clearly demonstrates the State of Mississippi's control over the fiscal policies established by the Board, and *a fortiori* over the finances of M.S.U." *Id.* at 1175. The Fifth Circuit found that "[s]tate decisional law confirms that the Board and the University are part and

8

parcel of the state." *Id.* In *Coleman v. Whipple*, 2 So. 2d 566 (Miss. 1941), the Mississippi Supreme Court found that the Board was "the managing board or head of the university . . . created by the State through its legislature which, under its act of creation (Sec. 5) retains the right to repeal the entire act; its property is owned by the State and the university is as an arm of the State, the State itself." 2 So. 2d at 568. The Mississippi Supreme Court stated that the acts creating MSU "must be similarly construed, and such construction is not at all affected by Chapter 127 of the Laws of 1932, creating a single board of trustees for all the state institutions of higher learning." *Id.* at 567. Thus, the Section 1983 claims and breach of contract claim against MSU and the Board are barred under the Eleventh Amendment unless an exception applies.

The Eleventh Amendment does not per se bar suits against state officers in their personal capacities for damages, as such suits are not suits against the state for purposes of Eleventh Amendment immunity. *See Arizonans for Official English*, 520 U.S. at 117, S. Ct. 1055; *Wilson v. UT Health Ctr.*, 973 F.2d 1263, 1271 (5th Cir. 1992), *cert. denied*, 507 U.S. 1004, 113 S. Ct. 1644, 123 L. Ed. 2d 266 (1993); *Hays Cnty. Guardian v. Supple*, 969 F.2d 111, 125 (5th Cir. 1992), *cert. denied*, 506 U.S. 1087, 113 S. Ct. 1067, 122 L. Ed. 2d 371 (1993); *Crane v. Tex.*, 759 F.2d 412, 428 n.17 (5th Cir. 1985), *cert. denied*, 474 U.S. 1020 (1985). However, "the distinction between official-capacity suits is more than 'a mere pleading device.' " *Hafer*, 502 U.S. at 27, 112 S. Ct. 358.

In the case *sub judice*, Plaintiff seeks injunctive and monetary relief from Defendants. Any injunctive relief, such as specific performance, would operate against the State and not the individual Defendants. Therefore, the Eleventh Amendment bars all injunctive relief sought by

9

Plaintiff—whether against the State or the individually named Defendants—as any injunction would be against the State.

However, this Court holds that the Eleventh Amendment does not bar Plaintiff's claims for monetary relief to be paid from the individually named Defendants' own pockets, as any such relief would not be against the State itself, but would impact only the individually named Defendants. *See Graham*, 473 U.S. at 167–68, 105 S. Ct. 3099; *Foster*, 2001 WL 185033, at *6.[5]

Therefore, unless an exception applies, the Eleventh Amendment bars the Section 1983 claims and breach of contract claim, except to the extent those claims seek monetary relief from the individually named Defendants in their personal capacities. There are three possible exceptions to Eleventh Amendment immunity: (i) valid abrogation by Congress; (ii) waiver or consent to suit by the state; or (iii) the state's amenability to suit under the *Ex parte Young* doctrine.

*(i) Abrogation*

Abrogation applies only if Congress has unequivocally expressed its intent to abrogate a state's sovereign immunity and is acting pursuant to a valid exercise of power. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55, 116 S. Ct. 1114, 134 L.Ed.2d 252 (1996). Section 1983 does not explicitly indicate Congress's intent to abrogate a state's Eleventh Amendment immunity from suit. *See Quern v. Jordan*, 440 U.S. 332, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979); *Edelman v. Jordan*, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974). Nor has Congress expressed any intent to abrogate the state's sovereign immunity from suit on breach of

---

[5] Because the Section 1983 claims and breach of contract claim for monetary relief against the individually named Defendants in their individual capacities are not impacted by Eleventh Amendment immunity, these claims are addressed later in this opinion.

contract claims. Thus, abrogation does not apply as an exception to Eleventh Amendment immunity in the case *sub judice*.

*(ii) Waiver/Consent to Suit*

Eleventh Amendment sovereign immunity from suit is waiveable, but such waiver must be clearly stated and will not be easily implied. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997); *Jagnandan*, 538 F.2d at 1117 (citing *Edelman*, 415 U.S. at 673, 94 S. Ct. 1347; *Petty v. Tenn.-Mo. Bridge Comm'n*, 359 U.S. 275, 276, 79 S. Ct. 785, 3 L. Ed. 2d 804 (1959)).

The Fifth Circuit has stated that

> [n]o mention is made of the power to sue or to be sued either in the organizational statutes or in the general powers and duties of the Board. Under specific circumstances the Board is allowed to sue or be sued. In these instances, however, the waiver is limited to a narrowly defined activity. The consent to be sued is not given with such clarity as to amount to a waiver of Eleventh Amendment protection.

*Jagnandan*, 538 F.2d at 1177 (footnotes omitted); *see* MISS. CODE ANN. §§ 37-101-3, 37-101-7, 37-101-15 (1972). The Mississippi Code provides in pertinent part that "[MSU] shall continue to exist as a body-politic and corporate, . . . with all its property and the franchises, rights, powers, and privileges heretofore conferred on it by law, or properly incident to such a body and necessary to accomplish the purpose of its creation[.]" MISS. CODE ANN. § 37-113-3. The Fifth Circuit has stated that "[t]his provision . . . lacks the clarity needed in order to infer the state's consent to be sued." *Jagnandan*, 538 F.2d at 1178. Accordingly, it cannot be said that the Defendants have waived or consented to be sued on the state law breach of contract claim. States (including arms of the state and state officers in their official capacities) are immune from suit on Section 1983 claims under the Eleventh Amendment, as states are not "persons" subject

to liability under Section 1983. *Arizonans for Official English*, 520 U.S. at 69 & 69 n.24, 117 S. Ct. 1055; *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).

Plaintiff argues, unavailingly, that Defendants have otherwise waived or consented to be sued. First, Plaintiff contends that Defendants' acceptance of vast federal funding constitutes a waiver of sovereign immunity. The Court finds the argument unpersuasive, as the Fifth Circuit has previously rejected such an argument. *See McGarry v. Univ. of Miss. Med. Ctr.*, 355 F. App'x 853, 856 (5th Cir. 2009); *Sullivan v. Univ. of Tex. Health Sci. Ctr.*, 217 F. App'x 391, 395 (5th Cir. 2007).

Second, Plaintiff contends that Defendants have voluntarily consented to suit by engaging in extensive discovery, agreeing to numerous trial settings, and otherwise participating in the case. Defendants maintain that they were sued involuntarily by Plaintiff and have not consented to suit by participation. The Court agrees. Defendants have done nothing to actively invoke this Court's jurisdiction. Therefore, the Court finds that Defendants have neither waived sovereign immunity nor consented to suit on either the Section 1983 claim or the state law breach of contract claim, and the second exception to Eleventh Amendment immunity does not apply in this case.

*(iii) Ex parte Young Doctrine*

The third and final possible exception to Eleventh Amendment immunity is the state's amenability to suit under the *Ex parte Young* doctrine. As the following reasoning will show, the Court finds that all Section 1983 claims are barred by the Eleventh Amendment, except (i) the Section 1983 claims seeking monetary relief from the individually named Defendants in their personal capacities, and (ii) the Section 1983 claims for injunctive relief against the individually

named Defendants in their official capacities. The Court finds that the breach of contract claim is barred by the Eleventh Amendment except to the extent Plaintiff seeks monetary relief from the individually named Defendants in their personal capacities.

### *Ex parte Young* – Section 1983 Claims

To overcome Eleventh Amendment immunity, the plaintiff must bring an action grounded in federal law for monetary relief that is "ancillary" to injunctive relief against named state officials. *Edelman v. Jordan*, 415 U.S. at 667–68, 94 S. Ct. 1347. Plaintiff's Section 1983 claims for monetary damages are not ancillary to any injunctive relief sought, and *Ex parte Young* does not allow Section 1983 suits for damages against a state. *See Pennhurst*, 465 U.S. at 104–05, 104 S. Ct. 900. Thus, such claims are barred by the Eleventh Amendment.

Plaintiff's Section 1983 claims for injunctive relief are permitted only if brought against the appropriate state officials and seeking prospective relief to end a continuing violation of federal law. *See id.*, 104 S. Ct. 900; *Walker v. Livingston*, 381 F. App'x 477, 478 (5th Cir. 2010) (citing *Seminole Tribe*, 517 U.S. at 73, 116 S. Ct. 1114 (citing *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908))). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.' " *Idaho*, 521 U.S. at 296, 117 S. Ct. 2028 (O'Connor, J., concurring in part and concurring in judgment). Plaintiff's Section 1983 claims for injunctive relief against MSU and the Board are barred, as neither Defendant is a state official responsible for enforcing the federal law at issue. Thus, it remains for the Court to determine whether Plaintiff's Section 1983 claims for injunctive relief may be asserted against the individually named Defendants in their official capacities.

"Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.' [T]his provision safeguards certain rights conferred by federal statutes." *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S. Ct. 1353, 137 L. Ed. 2d 569 (1997) (citing *Maine v. Thiboutot*, 448 U.S. 1, 100 S. Ct. 2502, 65 L. Ed. 2d 555 (1980)). Plaintiff alleges that Defendants, acting under color of state law, violated federal law by depriving Plaintiff of constitutional rights including his right to equal protection, both procedural and substantive due process, and liberty interests. Because Plaintiff has asserted that his termination from his position at MSU was unlawful and seeks injunctive relief for the same from named state officials, Plaintiff has alleged prospective relief for ongoing violations of federal law against those officials. *See Nelson v. Univ. of Tex. at Dall.*, 535 F.3d 318, 324 (5th Cir. 2008) (former state university employee's request for reinstatement of employment in his suit for FMLA and constitutional violations was "a claim for prospective relief designed to end a continuing violation of federal law" and thus within the *Ex parte Young* exception to Eleventh Amendment immunity). Thus, *Ex parte Young* allows Plaintiff's Section 1983 claims for prospective injunctive relief against the individually named Defendants in their official capacities.

<u>*Ex parte Young* – Breach of Contract Claim</u>

Plaintiff's breach of contract claim for injunctive relief against MSU, the Board, and the individually named Defendants in both their personal and official capacities is barred by *Ex parte Young*, which does not allow injunctive relief requiring a state official to conform his future conduct to state law. Plaintiff's breach of contract claim for monetary relief is similarly barred, except insofar as it is asserted against the individually named Defendants in their personal capacities.

14

## 2. Remaining Section 1983 Claims – Qualified Immunity and Rule 12(b)(6)

Defendants argue that Plaintiff's claims for relief under Section 1983 are barred against the individually named Defendants due to their immunity as state employees. Defendants further argue that any remaining Section 1983 claims must be dismissed for failure to state a claim. The Court finds both of these arguments well taken.

As stated above, Plaintiff's only Section 1983 claims remaining after the Eleventh Amendment analysis are those for prospective injunctive relief against the individually named Defendants in their official capacities, and those for monetary damages against the individually named Defendants in their personal capacities. Based on the following analysis, the Court finds that Plaintiff's Section 1983 claims against the individually named Defendants in their personal capacities are barred under principles of qualified immunity, and Plaintiff's remaining Section 1983 claims for prospective, injunctive relief must be dismissed for failure to state a claim under Rule 12(b)(6).

The Fifth Circuit has recognized that Section 1983 claims against public officials are subject to a heightened pleading requirement; a plaintiff is required to assert "claims of specific conduct and actions giving rise to a Constitutional violation." *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996). "State officers are subject to [Section] 1983 liability for damages in their personal capacities . . . even when the conduct in question relates to their official duties." *Arizonans for Official English*, 520 U.S. at 69 n.24, 117 S. Ct. 1055 (citing *Hafer*, 502 U.S. at 25–31, 112 S. Ct. 358). "Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law" that "caused the deprivation of a federal right." *Hafer*, 502 U.S. at 25, 112 S. Ct. 358 (citing *Graham*, 473 U.S. at 166, 105 S. Ct. 3099). Pertinent to the case *sub judice*, the employment decisions of state officials are subject to suit under Section 1983. *See id.* at 21, 112 S. Ct. 358. State officials sued in their personal

15

capacities are only immune from suit if they assert a valid personal immunity defense under existing law, such as qualified immunity. *Id.* at 25, 29, 112 S. Ct. 358; *Graham*, 473 U.S. at 166–67, 105 S. Ct. 3099.

In evaluating a claim of qualified immunity, courts consider (1) whether the plaintiff has alleged a violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 200, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). Courts have discretion to determine which of these questions to address first. *Pearson*, 555 U.S. at 236, 129 S. Ct. 808.

Qualified immunity bars suit against state officials "if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Walker*, 381 F. App'x 479 (quoting *Pearson*, 555 U.S. at 231, 129 S. Ct. 808 (internal citation omitted)). In other words, it must be such that "it would be clear to a reasonable officer that his or her conduct was unlawful." *Id.* "The facts alleged, taken in the light most favorable to the party asserting the injury, must show that the officer's conduct violated a constitutional right." *Id.* (citing *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001)).

"An individual sued in his personal capacity cannot be held liable under [Section] 1983 unless he was either personally involved in the acts causing deprivation of a constitutional right, or a causal connection exits between the act and the alleged constitutional violation." *Hamad v. Gary DeShazo & Assocs.*, 95 F.3d 1149, 1996 WL 481362, at *1 (5th Cir. Aug. 14, 1996) (per curiam). If an official's conduct was objectively reasonable, it does not matter if that official's conduct violated a constitutional right; he is still entitled to qualified immunity. *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 473 (5th Cir. 1996). In order to overcome Defendants'

16

defense of qualified immunity, Plaintiff's complaint must allege facts that, if true, demonstrate that each individual Defendant violated his rights by acting in a way that he or she should have known was unlawful. "When considering a defendant's entitlement to qualified immunity, we must ask· whether the law so clearly and unambiguously prohibited his conduct that 'every reasonable official would understand that what he is doing violates [the law].' " *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (citing *Ashcroft v. Al–Kidd*, ___ U.S. ___, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011) (internal citation omitted)). The Plaintiff has asserted due process and equal protection claims under Section 1983. The Court examines Plaintiff's claims against each of the individually named Defendants in their personal capacities in light of this standard.

### a. Due Process Claims

The Plaintiff alleges that Defendants violated his due process rights by failing to conduct a prompt, remedial investigation of Plaintiff's allegations of discrimination, despite knowledge of these allegations. He also alleges that Defendants discriminatorily applied their employment policies as part of their contractual relationship with Plaintiff and that Defendants breached their contract with him. Plaintiff further alleges that Defendants did not prevent the discriminatory conduct, but instead allowed, ratified, or perpetrated the discrimination.

The Due Process Clause of the Fourteenth Amendment includes a procedural component and a substantive component. *Daniels v. Williams*, 474 U.S. 327, 331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986). "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 566–67, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972).

Similarly, substantive due process offers protection to an individual only if that person has either a "constitutionally protected property interest," *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 222, 106 S. Ct. 507, 88 L. Ed. 2d 523 (1985), or a similarly protected liberty interest, *Kelley v. Johnson*, 425 U.S. 238, 244, 96 S. Ct. 1440, 47 L. Ed. 2d 708 (1976). Thus, the validity of Plaintiff's due process claims hinges on whether he had a constitutionally protected property interest or similarly protected liberty interest in his position as a professor at MSU. *See Frazier v. Garrison Indep. Sch. Dist.*, 980 F.2d 1514, 1528 (5th Cir. 1993) (the procedural due process clause of the Fourteenth Amendment is "implicated only if a person has a constitutionally recognized interest in life, liberty, or property").

*(i) Protected Property Interest*

Whether Plaintiff possessed a protected property interest in his position at MSU is "determined by reference to state law," *Wells v. Hico Indep. Sch. Dist.*, 736 F.2d 243, 252 (5th Cir. 1984), and must "stem from independent sources such as state statutes, local ordinances, existing rules, contractual provisions, or mutually explicit understandings," *Blackburn v. City of Marshall*, 42 F.3d 925, 936–37 (5th Cir. 1995). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577, 92 S. Ct. 2701. The United States Supreme Court held in *Roth* that "[a]n at-will college professor had no 'property' interest in his job within the meaning of the Fourteenth Amendment so as to require the university to hold a hearing before terminating him." *Conn v. Gabbert*, 526 U.S. 286, 291, 119 S. Ct. 1292, 143 L. Ed. 2d 399 (1999) (citing *Roth*, 408 U.S. at 578, 92 S. Ct. 2701). "Absent a state statute or university rule or 'anything approaching a "common law" of re-employment,' however, we held that Dr. Roth had no property interest in

18

the renewal of his teaching contract." *Ewing*, 474 U.S. at 223 n.9, 106 S. Ct. 507 (citing *Roth*, 408 U.S. at 578 n.16, 92 S. Ct. 2701).

> In *Roth*, an assistant professor was hired for a fixed term of one academic year, and had no tenure. The Court held that the teacher had no property interest in the job, since the terms of employment allowed that his contract not be renewed. The critical consideration was that the terms "did not provide for contract renewal absent 'sufficient cause.'" The rights to continued employment were determined by state law. The Court took great pains, however, to point out that a tenured appointment, providing for entitlement to a job, absent cause, would be a far different case.

*Arnett v. Kennedy*, 416 U.S. 134, 184–85, 94 S. Ct. 1633 (1974) (internal citation omitted).

The Fifth Circuit has stated:

> Mississippi law is clear that neither state legislation nor state regulations create a legitimate expectation of continued employment for a non-tenured faculty member:
>
>> Section 37-101-15(f) [Miss. Code Ann.] . . . empowers the Board of Trustees to terminate employment contracts at any time for malfeasance, inefficiency or contumacious conduct, but does not create a legitimate expectation of continued employment for a non-tenured employee.

*Whiting v. Univ. of So. Miss.*, 451 F.3d 339, 344 (5th Cir. 2006) (quoting *Wicks v. Miss. Valley State Univ.*, 536 So. 2d 20, 23 (Miss. 1988) (internal citations omitted)).

In the case *sub judice*, Plaintiff was employed for a certain amount of time as a tenure-track professor at MSU. Employment decisions were made by the Board. The Court has no documentation before it to provide further details of Plaintiff's employment. Plaintiff has attached to his brief in support of his response to the motion to dismiss a copy of a terminal employment contract providing that Plaintiff would be employed from August 16, 2007 until

May 15, 2008 as an "assistant professor, electrical and computer engineering (tenure track) at Mississippi State University," subject to termination for any of the following reasons:

a. Financial exigencies as declared by **the Board**;
b. Termination or reductions of programs, academic or administrative units as approved by **the Board**;
c. Malfeasance, inefficiency or contumacious conduct;
d. For cause.

*Id.* (emphasis in original). The contract further states that "[e]mployment in this capacity will not be offered for the Fiscal Year 2008 – 2009." *Id.*[6]

The Court determines from this information that at the time of his termination Plaintiff had no cognizable property interest in continued employment with MSU, and thus he has no viable substantive or procedural due process claim. *See, e.g., Hoffmans v. Univ. of Tex. at El Paso*, 22 F.3d 1093, 1994 WL 198869, at *2 (5th Cir. 1994) (per curiam) (university professor had no cognizable property interest in an expected pay raise because any pay raise she received was dependent upon whether her appointment was approved each year by the Board of Regents). "A mere breach of contract will not suffice for an action under [Section] 1983 without a violation of due process rights." *Whiting*, 451 F.3d at 345 (citing *Bishop v. Wood*, 426 U.S. 341, 349–50, 96 S. Ct. 2074, 48 L. Ed. 2d 684 (1976)). Consequently, the Court finds the Plaintiff had no protected property interest in his position at MSU. The Court now must determine whether the Plaintiff had a protected liberty interest in his position at MSU.

*(ii) Protected Liberty Interest Claim*

Protected liberty interests include the freedom to work and earn a living. *Roth*, 408 U.S. at 577, 92 S. Ct. 2701. To determine if a public employee has been deprived of a protected

---

[6] The Court notes that the copy of the employment contract attached to Plaintiff's brief is executed and dated only by the Plaintiff and not by the Board. However, the Defendants concede in their answers to the complaint that "Plaintiff . . . worked under a terminal Contract he signed on August 20, 2007 until about May of 2008."

liberty interest, courts must find that the employee was either "terminated for a reason which was (i) false, (ii) publicized, and (iii) stigmatizing to his standing or reputation in his community[,] or [ ] terminated for a reason that was (i) false and (ii) had a stigmatizing effect such that (iii) he was denied other employment opportunities as a result." *Cabrol v. Town of Youngsville*, 106 F.3d 101, 107 (5th Cir. 1997) (citing *Roth*, 408 U.S. at 564, 92 S. Ct. 2701; *Codd v. Velger*, 429 U.S. 624, 627–28, 97 S. Ct. 882, 51 L. Ed. 2d 92 (1977) (per curiam)); *Moore v. Miss. Valley State Univ.*, 871 F.2d 545, 549 (5th Cir. 1989); *Wells*, 736 F.2d at 256–57. The Court determines that because Plaintiff has not alleged facts showing either of these scenarios, Plaintiff has not stated a claim for a constitutionally protected liberty interest of which he could have been deprived by the actions of the individually named Defendants. Therefore, the Court finds that Plaintiff has not asserted a viable due process claim under Section 1983.

### b. Equal Protection

Plaintiff next alleges that the individual Defendants treated him differently than others similarly situated because of his national origin, race, and speech in violation of his equal protection rights under Section 1983. *See Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir. 1992). He avers that the Defendants discriminated against him and at least one other professor who also had a distinctive skin color, ethnicity, and speech.

"The Equal Protection Clause reaches only state actors, but [Section] 1983 equal protection claims may be brought against individuals as well as municipalities and certain other state entities." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257, 129 S. Ct. 788, 172 L. Ed. 2d 582 (2009) (citing *West v. Atkins*, 487 U.S. 42, 48–51, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988)). States must treat "all persons similarly situated" alike. *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). However, plaintiffs

bringing equal protection claims must prove the existence of purposeful discrimination. *McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S. Ct. 1756, 95 L. Ed. 2d 262 (1987). "Discriminatory purpose . . . implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group[.]" *Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir. 1988) (internal quotations, citations, and footnote omitted). Classifications based on race, alienage, or national origin "are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest." *Cleburne*, 473 U.S. at 440, 105 S. Ct. 3249 (citation omitted).

"[A] plaintiff suing a public official under [Section] 1983" fails to state a claim unless his complaint "rests on more than conclusions alone." *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc). In the case *sub judice*, Plaintiff has made conclusory allegations of discrimination based on his race and national origin, but has not alleged facts reflecting any racial motivation on the part of the Defendants. He alleges merely that "it was made clear to [Plaintiff], by word and by deed, that he was being discriminated [against]." *See* Pl.'s Compl. [1] ¶ 8. Plaintiff has not alleged facts that would establish that Korean professors were treated differently than others similarly situated because of their race or national origin. Plaintiff similarly has provided no factual basis for the contention that Caucasian professors were given preferential treatment. For these reasons, Plaintiff has failed to allege the existence of discrimination that would be subject to a "strict scrutiny" test. Thus, Plaintiff has not stated a viable claim for violation of his equal protection rights under Section 1983.

For the foregoing reasons, Plaintiff's Section 1983 claims against the individual Defendants in their personal capacities are barred under principles of qualified immunity, and

Plaintiff's remaining theories for relief under Section 1983 against the individually named Defendants in their official capacities must be dismissed pursuant to Rule 12(b)(6), as those theories fail to state a claim upon which relief may be granted.

### 3. Breach of Contract Claim – Qualified Immunity

Plaintiff's breach of contract claim against the individually named Defendants in their personal capacities is barred under qualified immunity. "The Mississippi Supreme Court has made clear that only the intentional torts listed in the MTCA preclude an individual's claim of immunity." *DePree v. Saunders*, 588 F.3d 282, 290 (5th Cir. 2009) (citing *Duncan v. Chamblee*, 757 So. 2d 946, 950 (Miss. 1999)).

The MTCA provides in pertinent part:

> An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties. For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense.

MISS. CODE ANN. § 11-46-7(2). The Plaintiff's breach of contract claim was directly related to the individual Defendants' actions taken in their official capacities (Dr. Fogelsong as President of MSU, Dr. Meredith as Commissioner of the Board, and Dr. Magee as a trustee of the Board); the termination of the Plaintiff from his employment and subsequent decision to deny by unanimous vote the Plaintiff's request for Board review were discretionary actions that involved public policy; and these actions were within the scope of the individual Defendants' official duties. Thus, the individual Defendants are also immune from suit on the breach of contract claim under principles of qualified immunity.

#### 4. Title VII Claim Against Individually Named Defendants

Finally, Defendants do not request dismissal of Plaintiff's Title VII claim against MSU and the Board, but ask the Court to dismiss Plaintiff's Title VII claim to the extent it is asserted against the individually named Defendants. The Court notes that to the extent Plaintiff's claims may be characterized as employment discrimination claims brought against an employer under Title VII, the claims are not barred by Eleventh Amendment immunity. *See Perez*, 307 F.3d at 326 n.1 ("we have long recognized that Congress has clearly abrogated the states' Eleventh Amendment immunity in enacting Title VII"). But "relief under Title VII is only available against an employer, not an individual supervisor or fellow employee." *Umoren v. Plano Indep. Sch. Dist.*, 457 F. App'x 422, 425 (5th Cir. 2012) (quoting *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340 n.8 (5th Cir. 2003) (citing 42 U.S.C. § 2000e(b)'s definition of "employer": "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person"). In *Foley*, the Fifth Circuit found that the plaintiff's employer was the university itself, as well as the university president, provost, and education division chair. *Foley*, 355 F.3d at 340 n.8. In the case *sub judice*, the employer is MSU, as well as the Board. Although the individually named Defendants in the case *sub judice* may be agents of the employer, they do not have individual liability on any Title VII claim. *See Grant v. Lone Star Co.*, 21 F.3d 649, 652–53 (5th Cir. 1994). The "agent" provision instead incorporates respondeat superior liability into the statute. *Id.* at 652 (internal citation omitted). Based on the foregoing, Plaintiff's only remaining claim is the Title VII claim against MSU and the Board.

*D.  Conclusion*

In sum, Defendants' motion to dismiss [44] is GRANTED and the following claims are dismissed: (1) the Section 1983 claims; (2) the state law breach of contract claim; and (3) the Title VII claim to the extent it is brought against the individually named Defendants.   The Plaintiff's Title VII claim against MSU and the Board remains viable.   The individually named Defendants should be dismissed as parties in this action, because no cause of action remains against them.

Plaintiff's motion to compel [58] is DENIED as moot.

A separate order in accordance with this opinion shall issue this day.

THIS, the 3 day of October, 2012.

_____
SENIOR JUDGE